Thank you so much for allowing me to speak about this subject today. I wanted to start Mr. Young is appealing on 2 counts today. He was sentenced in a court in Kansas City to cumulative misdemeanor assault, and he was sentenced to 2 years in prison, and he was sentenced to 3 years in prison. Relatively 20 years in prison. That was 15 years for the felon in possession of the firearm with the mandatory minimum with the ACCA, plus an additional 5 years, making it a total of 20. He appeals 2 issues today, and I wanted to start with the one that was hardest for me to get my head around, and that's the issue of how to address racial and implicit bias in the process of a trial, and particularly in veneer. Miss Williams, I right since you're beginning with that issue, I'd like to ask a question that the about something that the government raised in its red brief, which is the issue of waiver. Can you address waiver forfeiture? Where are we here? Well, they, as I understand it, they claim that this issue was raised by us after the judge said, if you want me to address this issue of race with the jury, I'll do that. And then we said, okay, that's fine. I don't know that that. Waves it and certainly I didn't intend to wave that issue when we went up to the bench. This was done at a bench conference, not in open court in front of the veneer panel. Obviously, we went up there. I honestly wasn't. Expecting the judge to ask all of my questions, but I had proposed these 12 questions that were opening the questions that were supposed to be designed to, to elicit some discussion, not just yes or no questions, but open ended ones when he said that he would address the issue of racial prejudice. It was clear to me that he wasn't going to go into the weeds of of this issue. Like, I wanted it to so I said, that's fine. You can do that. But then what he said, I think turned out and maybe to have made the situation slightly worse because the way he addressed it was a way that I don't think anybody would ever elicit a positive response out of essentially. Did you follow up and suggest additional questions after that? I didn't and the reason I didn't is because at that point, I felt like that there was some hostility about this issue and I didn't want to alienate the judge anymore related to this for my client. Well, you could could have made a record at least. Right? I mean, right. I mean, as I understand it, your argument is there's a significant difference between what I would call generally explicit bias or over racial bias and implicit bias. I mean, other than the fact that I wrote these questions about the implicit bias, and we had the bench meeting where I said, look, I'd really like to, you know, if you don't want to address the jet or address the veneer panel, I don't want to address the issue of racial bias. And then the way it was done was, was obviously not the way that we had intended. And also, I think a way that was pretty ineffective. I mean, just saying, is anybody here think that because this defendant is a victim of racial bias, that they should be held accountable? And if this defendant is African American, they won't be able to be fair. I think it's unrealistic to expect anybody, even someone who has overt racist feelings towards people of color to say, oh, yeah, I'm going to be I'm going to be the person that I'm not going to be able to be fair. Ms. Williams, how does WADIR work in your district? It looks like the district court judge did, gosh, 99% of it. Is that is that procedure there that the lawyers don't have a set amount of time to ask their own set of questions? It really depends on the judge. There's some of the judges that will allow anywhere from five to 20 minutes after the judge has finished doing the questioning to allow the council to address the panel if if they want to. Usually that's worked out beforehand, whether or not someone's going to ask any questions, but there's some judges that allow it and some judges that don't. So there's not something that's like a blanket rule. Are you just is there any kind of local rule or local expectation that you should request that if you have a particular topic that you want to explore with the jury? I don't honestly, I'm I don't know if there's any sort of local rule the way that we do it as we submit these questions. And then when we have our pre trial meeting to discuss everything, the judge asks about these, you know, the questions that we submitted and then asks if they're going to allow council to present asks if we want to present or if we're going to want to present or if the judge is going to do all of it. So I don't think there's anything official is what I'm saying. So, council, just to cut to the chase, wouldn't it Rosales Maris have to be overruled in order for you to prevail? You know, it might have to be, and that is an issue. And, you know, like I said, my brief and one of the reasons that I wanted to start with this is because this is a hard issue to address. It's a hard issue to talk about, and it's a hard issue to address, and it's a hard issue to address in a courtroom setting. But it is something that I think that is very important. The way Judge Bennett described it, you know, there's a constitutional standard, like, when the Constitution requires that this be that racial prejudice be addressed, like, if that's one of the main driving forces of of the of the trial, or if that's a big issue in the trial. But the other one has to do with, like, perception. And the fact is, is that my client and most of my clients of color have had very different experiences with the criminal justice system than I have, or that most of my white friends have. And he felt very strongly that this was a racist stop. And because of that, he wanted to make sure that the jury that was sitting in judgment of him, you know, we can't just say, don't be prejudiced and suck all the prejudice out of everybody's head. But it does. Nobody wants to be thought of as racist and nobody wants to be thought of as there's someone that has biases against people. But when you bring up these issues, it causes people to think hard about it and make sure they they, you know, judge the evidence in a way that they're not. I'm wondering, is your is your view that district court should be required to address implicit bias limited to race situations or would it apply more broadly if we were to accept your argument? In other words, if if a defendant was a particular group of any particular, you know, disadvantaged group, in other words, under your argument, would would a district court have to get into implicit bias against, for example, Jews or against women or against homosexuals? I mean, in other words, in any case, is there any upfront showing that has to be made first before a district court has to do this or any time a defendant thinks there may be an implicit bias as a district court obligated? If the defendant feels, as you just indicated, your client did, and I don't doubt that in any case, that is any implicit bias required to be addressed. You know, I honestly think that it is. I mean, I don't I don't see one of the government's arguments is that this would have just taken too long. And, you know, my clients are facing years and years and years in prison. My client in this particular case is almost 60 and he got a 20 year sentence. That could very well be that he spends the rest of his life in prison on this, you know, having a couple of questions. And maybe the way I went about it isn't isn't the best way to do it. But but this is something I think that we need to be be thinking about and putting in the forefront of our minds when we're when we're doing these cases. And, you know, maybe it could be done, like, with the video that, for example, the Washington court plays or jury instruction about implicit bias or allowing counsel to conduct a little bit a limited voir dire about this issue. But, yeah, I think if there is a chance or if the defendant is feeling like this case is stacked against them already inquiring about whether or not people feel a way a certain way or another about whatever group that the defendant is. You know, if it makes and I see that I'm out of time, so I'll wrap up. I apologize. It makes for more confidence in our system that we are trying to be fair and we were trying to recognize that some people have a different playing field than other people. Thank you. Thank you. Miss Williams, Mr. Wagner. Thank you, Judge Kelly. And may it please the court. David Wagner for the United States. I'll just start briefly with the topic of waiver, which I think was I don't have a lot more to say on that. I think Judge Cobus hit the nail on the head when he pointed out that based on the colloquy. Based with the with the district court, there's really no way for the district court to know that what he had done, what he proposed to do and then did was was in any way inadequate for for what the defense wanted in this case. And I think that's the council. It seems to me that that dialogue was rather vague. Is it possible that council misunderstood what the district court was going to do? And was there any opportunity to object after that? Well, just to take the first part of the question, I don't I don't actually find it vague. I think I think the district court explained very clearly that there's there can be questions about implicit bias on the one hand or there can be questions about race. His proposal was to ask a question about race and to that defense counsel said, OK, that would be great. So I think I think it was pretty clear what he was proposing to do. And to the second part of your question about an opportunity to object, obviously, he didn't turn the district court, didn't turn to counsel and say, was that good enough? But I think the discussion that had happened made it incumbent upon defense counsel to at that point interject and say something, even if the district court didn't explicitly say, does that address the questions that you wanted me to ask? Mr. Wagner, I have a follow up question about the colloquy. I think that you're you are referencing where the district court does distinguish. She's saying Ms. Williams asks for a little bit of wadir about race and he says, well, all right, there are race questions and there are implicit bias questions, right? She says, yes. And he says, I'll be happy to broach the subject of race is I mean, I guess another way you could look at that is it's an implicit denial of her request for implicit bias questions and then it's preserved. Oh, I don't read it that way at all. I think it's he's offering the court was offering essentially a compromise or or suggesting a compromise. And I think there's also the issue of the response there. It wasn't it wasn't, you know, to continue to say, well, I would also like some implicit bias questions, but to say that would be great. I don't know how to read that other other than an acceptance of what the district court was proposing to do. But let me move on for in those other questions about waiver, I'd like to move on and get to them into the merits of this issue, because I think the fundamental disagreement here between the defense and the government in this case is that the government doesn't think that the defense's position accounts for all the safeguards that we have at trial to protect against the risk of bias, whether it be. Racial bias, gender bias, religious bias, any any sorts of bias like that. And I think those safeguards were very important to the Supreme Court in in Rosales Lopez that one of the two reasons the Supreme Court found there was no reasonable possibility of racial prejudice in that case was because the district court had asked a question about aliens. And therefore, the Supreme Court said that would cover the concern about bias towards Mexicans. Mr Wagner here, are we are we sort of in a different world altogether? I don't mean literally world, but but the world of biases. We it's clear. I think that the Supreme Court and. Traditionally, we've talked about when we said bias, we're talking about explicit biases that that the courts have said, look, instructions that address that directly. That's good. You know, juries are going to listen to that and don't know what else we can do. But in implicit bias just seems to be a different, different animal altogether in some ways, even though it's still bias. And I'm just wondering how much we can rely on the explicit bias cases and instructions to get at something that. I think that the research is saying we all have it, and it may not even be something that is a for cause strike for someone, but it's something that is there that the defendants want to talk about. Can you can you address that distinction if you also see one? Yeah, I think there may be a little bit of a distinction there. I still think that the case law about that deals with explicit bias or seems to deal with explicit bias. I'm not sure it exactly distinguishes between the two. I still think that's useful framework, but I do understand your point. And that's why I want to go back to the point about safeguards in the case, because I don't think implicit bias is so much an issue of getting jurors to admit that they're biased. And I think it's often called unconscious bias. So I'm not entirely sure anyone. I think the idea is you can't necessarily recognize that you have it. It's there and it causes you to have certain reactions, but you don't recognize you have it. But the way to address that is not necessarily to get people to admit it, but to make sure there's other safeguards in place. So to ask them, can you can you commit to deciding this case, not based on anything that you know or that you're any preconceptions that you have, but based only on the evidence and the law I give you. Asking jurors, can you separate yourself from the news? And, you know, don't worry. Don't think about all the things that you've heard in the news that might impact the way you think about this case and may contribute to whatever biases, implicit biases that you harbor within yourself, but only focus on the evidence in this case. Can you can you reserve decision until you've had an opportunity to talk with your fellow jurors and deliberate? You said something. Did you add the phrase implicit bias in the instruction you were just summarizing? Not rely on any implicit biases you may have. I don't know if I did or not, actually. Certainly, I didn't mean to imply that was said at trial. OK, that's what I wanted to ask if that was actually in the instructions. I didn't think it was, but I wanted to make sure I understood the record. You're absolutely correct. The words implicit bias were not in the instruction. The exact instruction was, quote, to not allow sympathy or prejudice to influence you. The law demands of you a just verdict unaffected by anything except the evidence. Your common sense is a law. I give it to you in the law as I give it to you. And of course, it doesn't say the words implicit bias, but it's it's reminding the jurors and encouraging them. Don't think you know, don't act on your preconceptions. Don't act on sympathy or prejudice. Think about the facts. Think about the law I give you. And then also, very importantly, in the Supreme Court has has recognized that this is a critical safeguard against the risk of bias among jurors, which is to reserve decision until full deliberation. And that deliberative process, talking about it with fellow jurors rather than coming to, you know, a knee jerk reaction based on what you what you know, some evidence that you see in the case. I think that's a very important safeguard against the risk of jurors basing a verdict on their implicit or unconscious biases. So all those things, although they don't use the words implicit bias and maybe those safeguards were put in place at a time before, you know, this was this concern was at the forefront of jurists minds. I think they all address exactly this issue and protect against it. And I think that's that's also why these these these studies of how some people have reacted, you know, to to situations that involve a racial element in findings that some people have found people of a different race more more guilty than if the fact pattern is presented as somebody of another race. I think that's why those are very unpersuasive in this context, because those people didn't receive these instructions. They didn't hear evidence in the solemn setting of a courtroom. They didn't take an oath to abide by the court's instructions. They didn't deliberate with fellow jurors. They were just coming up with thoughts off the top of their heads. And that's exactly what we want to guard against in trials. And that's exactly why courts give these sorts of instructions. I'd like to address. Just very briefly, Judge Graza's point about whether the defense position in this case would require overruling Rosales Lopez and admittedly, Rosales Lopez doesn't involve implicit bias specifically. But I think the framework there is the question is whether race is an issue in the case such that there's a reasonable probability that a jury can be impacted by racial bias. And we know that because the example is a violent crime involving a victim and perpetrator of different races. To say, to take Rosales Lopez and say there's a reasonable probability in any case that involves a minority defendant, I think would really turn that precedent on its head. And I don't think it can be consistent with that precedent. I would also point out that the Supreme Court said in Rosales Lopez, and I'm quoting, there's no constitutional presumption of juror bias for or against members of any particular racial or ethnic groups. It seems to me that the per se rule that the defendant is asking for creates just that presumption. I see I'm out of time. I'd be happy to answer any more questions, but otherwise would ask the court to affirm. Thank you, Mr. Wagner. Does Ms. Williams have any rebuttal time left? Would you, do you need a minute to respond or would you like to stand on your main argument? If I could just have one minute, I just want to respond to one thing. I think, and while we all want to feel like what the government said is 100% true, by being in a court and being solemn and having the judge say you can't have this other stuff affect you, everybody wants to think that they are going to be fair and they are not going to let that stuff happen. And I think that most people would say, oh, well, I'm absolutely not thinking this person is guilty because he's black. That's not what I'm talking about. All the cases related to this were done in the 80s and the 70s. And there's a different mindset now. Race is much more of a forefront of an issue. We have recognized systematic racism within our courts and our policing system as something that exists. And we need to do a better job addressing it, particularly for our defendants of color who are facing the rest of their life in prison. I think asking a few questions to elicit this isn't something that is too much to ask. Thank you. Thank you to both counsel for your arguments in the case and for your briefing and we'll take the matter under advisement.